**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

JAMES A. KING, ET AL

      Plaintiffs,

v.                                             Civil Action No. 1:10-cv-1024

SEARS ROEBUCK & COMPANY, ET AL

      Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendants' Anderson Products, Inc. and Weiler Corporation's *Motion for Sanctions* (Document 90) and the *Memorandum of Law in Support of Motion for Sanctions* and attached exhibits (Document 91). After careful consideration, for the reasons stated herein, the Court finds that Anderson and Weiler's motion should be granted and the claims pending against them should be dismissed.

## I.    FACTUAL BACKGROUND

### A. From Removal to Anderson and Weiler's Motion for Sanctions

James A. King, a former employee of Defendant Sears, Roebuck and Co., along with his wife, Cristi Gale King, and daughter, Grace Eva Marie King, ("Plaintiffs"), brought this products liability action against Sears, Roebuck and Co., Sears Holding Management Corporation, and Sears Holding Corporation (collectively referred to as "Sears") on March 19, 2010, in the Circuit Court of Mercer County, West Virginia. (Document 1 at 10-11.) Sears, among others named in the original Complaint, removed the action to federal court on August 16, 2010, based on diversity jurisdiction. (*Id.* at 3.)

Magistrate Judge VanDervort entered the first Scheduling Order in this case on November 12, 2010.  (Document 15.)  Plaintiffs' counsel moved to amend the complaint and join other defendants on the day pleading amendments and party joinders were to be completed.  (Document 17); (*See* Document 15) (setting pleading amendment and party joinder completion deadlines for January 21, 2011).  The Honorable David A. Faber, Senior United States District Judge for the Southern District of West Virginia, noted that Plaintiffs' first motion to amend their complaint and join parties did not sufficiently specify which joinder rule applied to Plaintiffs' motion.  (Document 21.)  Accordingly, the Court ordered Plaintiffs to file a clarifying memorandum by April 24, 2011, so the Court could properly analyze Plaintiffs' joinder motion.  (*Id.* at 2) (noting that the joinder analysis differs depending on whether Rule 19 or Rule 20 of the Federal Rules of Civil Procedure applies).  Plaintiffs' counsel ignored this Court order, replying out of time on June 8, 2011.  (Document 26.)  Moreover, Plaintiffs' untimely response was buried within a separate and similarly untimely response to Sears' Motion to Continue the Scheduling Order.[1]  (*See, id.*); L. R. Civ. P. 7.1(a)(7)(requiring materials responding to motions to be filed and served "within 14 days from the date of service of the motion.").  Nevertheless, the Court entertained Plaintiffs' untimely response and granted their first motion to amend and join defendants.  (Document 27.)  The Court gave Plaintiffs ten (10) days from the June 27, 2011 Order to file an amended complaint.  (*Id.*)

---

[1] According to Sears, it filed the Motion to Continue the first Scheduling Order because "the progress of this litigation has been impeded," and Sears' ability to conduct discovery had been prejudiced by Plaintiffs' counsel's conduct up to that date.  (Document 22 at 1.)  Sears states that they have "attempted to contact Plaintiffs' counsel on a number of occasions seeking an updated medical release. . . [and] [their] inability to compile a complete medical history for the Plaintiff not only prejudices their ability to properly depose the Plaintiff, but it also affects the ability of a defense medical expert to perform a comprehensive evaluation of the Plaintiff's condition." (*Id.* at 3-4.)  Essentially, Sears alleged Plaintiffs' counsel was either unresponsive or consistently delayed in producing discovery.  (*See id.*)  Accordingly, Sears filed Motions to Compel certain discovery items.  (Documents 23 and 24.)  The Court denied those motions, in part, as premature when they were filed.  (*See* Document 71.)  Moreover, by the time the Court denied Sears' first Motions to Compel, a new Scheduling Order was operative. (*See, id.*)

Plaintiffs' counsel untimely filed their first amended complaint and subsequently moved to have it designated as timely because "[j]ust before the close of business on July 7, 2011"—the last day to file the first amended complaint—Deputy Clerk Mary Jane Pennington directed Plaintiffs' counsel to "resubmit[]" the amended complaint without reference to a previously terminated defendant.  (Document 35 at 2).[2]  Moreover, on the same day Plaintiffs filed their first amended complaint, Plaintiffs' counsel moved to file a second amended complaint almost <u>six months</u> after the operative Scheduling Order's deadline to complete pleading amendments and party joinders. (Documents 33 and 34); (*See* Document 15) (setting pleading amendment and party joinder completion deadlines for January 21, 2011).  On July 13, 2011, the Court formally vacated the first Scheduling Order, waiting for the newly joined parties to file their Answers before entering a new Scheduling Order. (Document 36.)   On August 18, 2011, the Court simultaneously granted Plaintiffs' motion to designate their First Amended Complaint as timely as well as their motion to file a Second Amended Complaint.  (Document 48.)  After receiving Defendants' timely Answers to Plaintiffs' Second Amended Complaint (Documents 51, 54, and 57), Magistrate Judge VanDervort entered the second Scheduling Order on December 30, 2011. (Document 70.)

Shortly thereafter, Defendants Anderson Products, Inc., and Weiler Corporation ("Anderson and Weiler") served their First Set of Interrogatories and Requests for Document Production on Plaintiffs on January 13, 2012.  (Document 72.)  Anderson and Weiler, again, served the same interrogatories and requests for document production on February 20, 2012. (Document 73.)  On March 7, 2012, Anderson and Weiler filed their own Motion to Compel,

---

[2] Presumably, Plaintiffs' counsel intended "close of business" to mean a time before 11:59:59 p.m. EST, the last second to meet a July 7, 2011 deadline using the federal judiciary's Case  Management/Electronic Case Filing system (CM-ECF).  In other words, unless Deputy Clerk Pennington elected to wait until just before the stroke of midnight to call and email Plaintiffs' counsel to inform him of a deficiency in the amended complaint, then Plaintiffs' counsel freely elected to file after the court-imposed deadline.

seeking an order "compelling the Plaintiffs to provide full and complete Answers and Responses to [their] First Set of Interrogatories and First Set of Requests for Production of Documents directed to the Plaintiffs." (Document 77.)  In support, they stated that "[a]n attempt to resolve this matter without the need for action by the Court has been made." (*Id.* at 1.)  By May 7, 2012, Plaintiffs' counsel had neither complied with Anderson and Weiler's discovery requests nor responded to Anderson and Weiler's Motion to Compel. (Document 83.)  Accordingly, Magistrate Judge VanDervort granted Anderson and Weiler's Motion to Compel, ordering Plaintiffs, should they wish to be heard, to file an explanation to avoid sanctions within ten (10) business days of the order.  (*Id.* at 2.)[3]  Eight months after the Magistrate Judge granted Anderson and Weiler's Motion to Compel, and twelve months after Anderson and Weiler first served interrogatories and document production requests, Plaintiffs' counsel hand-delivered the responses on January 14, 2013.  (Document 140.)

### B. Motion for Sanctions

On June 19, 2012, Anderson and Weiler filed this Motion for Sanctions. (Document 90.) As a basis for Rule 37 sanctions, Anderson and Weiler recited many of the foregoing facts regarding Plaintiffs' counsel's dilatory behavior as well as additional information not then in the court record. (*See* Document 91.)  For example, Anderson and Weiler allegedly began requesting information informally, and unsuccessfully, on August 3, 2011, soon after being joined as defendants. (*Id.* at 3.)   Anderson and Weiler further allege they "again requested Plaintiffs' medical records, the ability to collect medical records, copies of prior discovery disclosures and photographs of the exemplar products, instructions and manuals"  at the  Rule 26(f) scheduling

---

[3] Similarly, the Magistrate Judge ordered Defendants Anderson and Weiler to file an itemized statement of costs and fees associated with their Motion to Compel.  (Document 83 at 2.) Plaintiffs' counsel filed no explanation and Anderson and Weiler filed no itemized list of costs and fees within the ordered timeframe.  Therefore, the Court imposed no formal sanction at that time.

conference held on October 26, 2011.  (*Id.* at 4); (S*ee* Document 64.)  Anderson and Weiler allegedly followed up with Plaintiffs' counsel concerning these materials through letters dated November 14, 23, 30 and December 13, 2011.  (Document 91 at 4) (citing Document 91-1 at 5-8.) Anderson and Weiler also allege that these letters, like those beginning in August 2011, went unanswered.  (Document 91 at 4.)  Finally, in their Motion for Sanctions, Anderson and Weiler allege that Plaintiffs' counsel failed to meet the court-ordered deadline of December 7, 2011, for Rule 26(a)(1) disclosures. (*Id.* at 5) (citing Document 61.) Therefore, Anderson and Weiler submit that "at the very least" the claims against them should be dismissed. (Document 91 at 9.)

### C. June 26, 2012 Motions Hearing

The day after Anderson and Weiler filed their Motion for Sanctions, the Magistrate Judge set a hearing for June 26, 2012, to address several outstanding motions, including Defendants' Motions to Dismiss and the Motion for Sanctions. (*See* Document 92.)  At that hearing, Magistrate Judge VanDervort asked about the extreme delay in responding to Defendants' Motions to Dismiss.[4]  (*See* Document 97 at 4, ln. 10-12.)  Plaintiffs' counsel responded that Plaintiff James King's affidavit (Document 17-2) was intended to "preemptively address" Defendants' Motions to Dismiss.  (Document 97 at 5, ln. 21-24.)  Next, to "bolster" (*Id.* at 6, ln. 4) the non-existent response to Defendants' Motions to Dismiss, Plaintiffs' counsel argued that he "anticipated that the court would not" dispose of the Motions to Dismiss until at least March 2012.  (*Id.* at 7, ln. 23-25.)  Plaintiffs' counsel rationalized that in order to effectively respond to Defendants' Motions to Dismiss, particularly because they contained statutes of limitations defenses, Plaintiffs required discovery of confidential agreements between Sears and the other defendants as stronger evidence supporting the arguments in Plaintiffs' nine-month late response

---

[4] By the time of the June 26, 2012 motions hearing, Plaintiffs' response to Defendants' Motions to Dismiss was approximately nine (9) months overdue.

to the Motions to Dismiss. (*See, id.* at 5-8.) Since he had not yet received the confidential agreements, Plaintiffs' counsel argued that no formal response to Defendants' Motions to Dismiss was possible. (*See, id.* at 8, ln. 2-11.) Plaintiffs' counsel stated that "although there was a risk in proceeding with this method of presentation of the issues in defense of the motions, we thought it was prudent to await the receipt" of those agreements. (*Id.* at 8, ln. 7-10.)

Sears' counsel responded that Sears would produce the confidential agreements under a Protective Order, and had so indicated a year before the June 26, 2012 hearing. (*Id.* at 8, ln 22-25; 9, ln. 1-2.) However, as of the June 26, 2012 hearing, Plaintiffs' counsel had not agreed to a specific Protective Order. (*See, id.* at 9, ln. 9-14) Regardless, Sears' counsel indicated a failure to understand how producing confidential agreements impacted plaintiffs' ability to timely respond to defendants' Motions to Dismiss. (*See, id*, ln. 2-4.) In fact, Sears' counsel argued that the confidential agreements were "universal terms and conditions [. . .] for defense and immunity" among Sears and its vendors and could not impact the Motions to Dismiss, even in the statute of limitations context. (*Id.* at 16, ln. 18-23.) Black and Decker's counsel argued that, because the pleadings clearly showed the statute of limitations had expired as to certain defendants, the Motions to Dismiss were based purely on the pleadings. (*Id.* at 9, ln. 16-24.)

Magistrate Judge VanDervort largely agreed with Defendants that the confidential agreements were not relevant to disposing of Defendants' Motions to Dismiss. (*Id.* at 17, ln. 9-14.) Nevertheless, being reluctant to completely dismiss Plaintiffs' case because of their counsel's delay, the Magistrate Judge entertained the possibility that the confidential agreements might be relevant to deciding the statute of limitations issue in Defendants' Motions to Dismiss. (*See id.*, ln. 12-19.) Accordingly, Magistrate Judge VanDervort granted Plaintiffs an additional thirty (30) days from the June 26, 2012 hearing to file a response to Defendants' Motions to

Dismiss and the Motion for Sanctions.  (*Id.* at 27, ln. 8-15.)  Nevertheless, defense counsel made clear that the June 26, 2012 hearing was the first time Plaintiffs' counsel propounded his legal theory rationalizing a nine-month delay in responding to Defendants' Motions to Dismiss.  (*See, id.* at 12, ln. 6-10.)

### D. From the June 26, 2012 Motions Hearing to January 14, 2013 Motions Hearing

Despite Magistrate Judge VanDervort's clear thirty-day deadline, Plaintiffs' counsel missed it and, instead, filed a Motion for Enlargement of Time to File Memorandum on the day the response was due.  (Document 108.)  Moreover, Plaintiffs' counsel attempted to rationalize the untimely filing by arguing Plaintiffs were entitled, under the Federal Rules of Civil Procedure, to more than thirty days, even after meekly stating at the June 26, 2012 hearing that even "[fourteen] days is a lot to ask."  (Document 97 at 27, ln. 3); (*See* Document 108 at 2) (arguing that Rule 6(d) applied in this situation to effectively extend the court's discretionary thirty-day deadline by an additional three days).

Nevertheless, Plaintiffs' counsel filed an untimely response to Defendants' Motions to Dismiss. (Document 110.) However, Plaintiffs' counsel never responded to Anderson and Weiler's Motion for Sanctions.  Seeing that the Motion for Sanctions went unanswered for approximately five (5) months and that depositions of the Plaintiffs were being scheduled, cancelled, and re-scheduled, Judge Faber scheduled another hearing for January 14, 2013, to discuss Plaintiffs' Motion to Extend Time to Reply to Defendants' Motions to Dismiss and Anderson and Weiler's Motion for Sanctions.  (*See* Document 132.)

### E. January 14, 2013 Motions Hearing to Present

At the January 14, 2013 hearing, Judge Faber began by hearing arguments regarding Plaintiffs' motion to extend time to respond to Defendants' motions to dismiss.  (Document 143

7

at 4.) Plaintiffs' counsel referred the Court to the memorandum accompanying the motion to extend and further argued that the extension was "a very small request for additional time" and was made in a "timely manner." (*Id.* at 24, ln. 3-4.)  Black and Decker disagreed with Plaintiffs' counsel's characterization. (*See, id.* at 6, ln. 14-18; 8, ln. 6-15.)  Instead, Black and Decker argued that it had already been "severely prejudiced because of the delays" in the case (*Id.* at 5, ln. 11-12) and that granting yet another of Plaintiffs' motions for more time would exacerbate that prejudice. (*Id.* at 8, ln. 2-10.)  Anderson and Weiler echoed Black and Decker's comments, adding that Plaintiffs' counsel's reasoning for the extension does not explain why he waited until the day the response was due to file his motion. (*See, id.* at 31, ln. 21-25; 32, ln. 10-20.) In support of the motion for an extension, Plaintiffs' counsel stated that he did not receive "the documents long sought by Plaintiffs as imperative to an adequate response to the defendants' Motion to Dismiss" until July 11, 2012 – the day after the Court entered a protective order covering those confidential agreements. (Document 108.)  At the hearing, Anderson and Weiler stressed that "[Plaintiffs' counsel] would have had sixteen (16) days following the entry of that agreed order to then request the extension." (Document 143 at 32, ln 10-20.)[5]

In response to these arguments, Judge Faber asked Plaintiffs' counsel why he had not filed a timely motion to address the problem of not receiving the confidential agreements.  (*Id.* at 17, ln. 1-3.)  Plaintiffs' counsel responded, "[t]hat would have been the preferred course and what I should have done."  (*Id.*, ln. 4-5.)  The Judge then advised that "[i]t's the only course that would comply with the rules." (*Id.,* ln. 6-7.)

---

[5] Given that Plaintiffs' Motion to Extend Time to Respond related only to Black and Decker and Anderson and Weiler's Motions to Dismiss, Sears did not comment directly on that motion.

The remainder of the January 14, 2013 hearing dealt with Anderson and Weiler's Motion for Sanctions.  Regarding that motion, Plaintiffs' counsel revealed details personal to him and Plaintiff James A. King as explanation for the extreme delay in this case. (*See, id.* at 17-22.)

First, regarding the repeated cancellation and rescheduling of Defendants' depositions of James A. King, Plaintiffs' counsel told the Court that Mr. King had been hospitalized during and around the time of a scheduled deposition. (*Id.* at 18, ln. 13-17.)  This hospitalization concerned Mr. King's cellulitis, a condition allegedly related to the injury in this case. (*Id.,* ln. 21-25); (*Id.* at 19, ln. 1-2.)

Second, Plaintiffs' counsel gave an extensive account of his own personal problems during the previous three years—the approximate age of the case.  (*Id.* at 20-22.)  To summarize, Plaintiffs' counsel told the Court that, beginning in early 2010, he took responsibility for his ailing parents, who lived in North Carolina at the time. (*See, id.* at 20, ln. 3-13.) Plaintiffs' counsel argued that because his parents' North Carolina home was no longer suitable for their needs, and because Wheeling, West Virginia, was the best location for them, he worked to sell his parents' North Carolina home and relocate them to Wheeling near the beginning of 2011. (*See, id.*, ln. 14-25); (*See also, id.* at 21, ln. 1-6.)  According to Plaintiffs' counsel, selling his parents' North Carolina home was not without its own difficulties.  (*Id.* at 20, ln. 20-25); (*See, id.* at 21, ln, 1-17.)  Additionally, Plaintiffs' counsel stated that during his travels between Wheeling and North Carolina on his parents' behalf, his full-time secretary became very ill, eventually receiving a diagnosis of congestive heart failure, thus making her unavailable to assist Plaintiffs' counsel from March 2010 until the present. (*See, id.* at 21, ln. 24-15); (*see also, id.* at 22, ln. 1-8.) Plaintiffs' counsel stated that "[his] response to the 2010 thing as it evolved with both my parents

and my secretary was to stop taking cases, to curtail my practice, associate counsel in cases, and I have, at best, been a part-time lawyer in that time." (*Id.* at 22, ln. 9-12.)

After hearing the circumstances, Judge Faber asked why Plaintiffs' counsel had not revealed such details during the June 26, 2012 hearing. (*Id.*, ln. 13-14.) Judge Faber noted that during that hearing, Plaintiffs' counsel had only mentioned technical issues afflicting his computer systems as reasons for delaying the case. (*Id.*, ln. 21-23.) Plaintiffs' counsel simply responded, "I know I made some disclosures [at the June 26 hearing] . . . I did not go into it in great detail." (*Id.*, ln. 19-20, 24-25.) Moreover, Black and Decker had no knowledge of Plaintiffs' counsel's personal problems. (*Id.* at 29, ln. 9-10.) Anderson and Weiler recalled only vaguely some discussion regarding Plaintiff counsel's parents and secretary, but could not recall an extension request for those reasons. (*Id.* at 32, ln 1-9.) Ultimately, Plaintiffs' counsel conceded,

> I understand in making these comments that I'm not doing it to argue that it constitutes just cause for what I agree are the serious deficiencies in recognizing the timeliness of this court's deadlines, but only the court is competent to make that finding.

(*Id.* at 25, ln. 4-8.)

However, after detailing what seemed like an incredibly difficult period in one's life, Plaintiffs' counsel essentially admitted that he had held responses to Anderson and Weiler's discovery requests hostage. (*See, id.* at 28, ln. 11-24.) Plaintiffs' counsel explicitly stated that he told Anderson and Weiler's counsel,

> specifically and clearly, 'Joe, we have been waiting for these disclosures of the commercial agreements from the beginning. We can't answer the motion to dismiss without it. We are each sitting on something that the other owes to one another. Can we please get this resolved?'

(*Id.*, ln. 12-16.) Plaintiffs' counsel admitted his tactic for retrieving the confidential agreements was "not [. . .] an appropriate way [. . .] to deal with outstanding discovery requests."  (*Id.*, ln. 17-19.) Moreover, near the end of the hearing, Anderson and Weiler asserted they had just that day received four year old photographs of the metal fragment alleged to have caused Plaintiff James King's injury. (*Id.* at 44, ln. 20-23.)  Anderson and Weiler's counsel contended that "[t]hat information has been requested from the early days of this litigation, before the product defendants were involved, and [he's] asked for it for a year." (*Id.,* ln. 23-25.)  Plaintiffs' counsel responded that he supplied the four-year old photograph as "part of [Plaintiffs'] continuing duties to supplement" discovery.  (*Id.* at 47, ln. 2-3.)[6]  Finally, Plaintiffs' counsel notified the Court that he expected to respond to Defendants' joint motion to strike Plaintiffs' expert witnesses with a motion to modify the Scheduling Order. (*Id.* at 40, ln. 6-9.)

In Defendants' Joint Motion to Strike Plaintiffs' Expert Witnesses Dr. Norman Dowling, Dr. William Bird, Dr. Herbert Oye, Dr. Michael Shinnick, and Dr. William Cobb (Document 138), they allege that "Plaintiffs have failed to disclose an expert report by any of [the] listed witnesses in contravention of the Federal Rule of Civil Procedure 26(a)(2)(B), Local Rule 26.1 and this Court's current Scheduling Order." (*Id.* at 4.)  Defendants state that "[they] are incapable of defending undefined claims and theories, and will suffer severe prejudice if Plaintiffs are permitted to later disclose the information required by the Rules." (*Id.* at 8.)  Defendants moved for an order excluding, with prejudice, Drs. Dowling, Bird, Oye, Shinnick and Cobb, and striking Plaintiffs' expert disclosures pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure. (*Id.*)

---

[6] Plaintiffs' counsel stated that "[w]hen the photographs were produced at today's deposition, it was with a caveat: [w]e've assumed you have been able to recover these photographs through exercise of your authorization, because they're medical records. We have CDs that contain images, and I don't know if those images are there or not. They may be." (Document 143 at 46, ln. 22-25; 47, ln. 1-2.)

In response, Plaintiffs' counsel filed a Motion for Modification of Scheduling Order (Document 145), wherein he "moves that certain portions of the [Scheduling Order] be modified to accommodate the discovery of all evidence including new and highly relevant evidence." (*Id.* at 1.)  In support, Plaintiffs' counsel contends that Mr. King has been notified of the possibility of a limb amputation, and until he receives a medical opinion, any vocational and economic expert reports would lack validity. (Document 146 at 3-4.)  Plaintiffs' counsel also alleges that the "recent information regarding the existence and possession of the actual angle grinder used by Mr. King when he was injured on March 19, 2008" and the need to perform tests on exemplars have interfered with their liability expert's opinion. (*Id.* at 1, 4-5.)  Plaintiffs' counsel seeks "a 60 day enlargement of the time frame order as to paragraphs two and three and a compatible enlargement as to paragraphs four and five." (*Id.* at 6.)

Defendants replied that Plaintiffs' counsel's explanation for not producing expert disclosures by the deadline is "not a proper justification for the Plaintiffs' continued failure to adhere to the Federal Rules of Civil Procedure and the Court's Orders." (Document 148 at 2.) Defendants also noted that Plaintiffs' counsel failed to acknowledge that Mr. King's "ever-changing medical condition could be considered . . . through supplemental or amended expert disclosures provided for under the rules." (*Id.*) (citing Fed. R. Civ. P. 26(a)(2)(E)). With regard to the tests, Defendants stressed that "Plaintiffs have not explained why they have waited over 2 ½ years into this litigation to attempt to have their expert conduct an inspection and/or testing on the exemplars." (Document 148 at 2-3.)  Defendants also state that they were not advised of Mr. King's belief that the "angle grinder he was using on the date of the accident . . . was still in storage at the Sears' location where [he] is employed" until his January 15, 2013 deposition. (*Id.* at 3.)  Defendants highlight that "Plaintiffs have not offered any excuse as to why they have

waited almost 3 years to identify the potential location of and discover the alleged angle grinder at issue, thus causing additional delays in this matter." (*Id.* at 3-4.)

## II.    APPLICABLE LAW

Rule 37 of the Federal Rules of Civil Procedure addresses situations in which a party fails to make disclosures or cooperate in discovery. Fed. R. Civ. P. 37.  Pursuant to Rule 37(b)(2), a court may sanction a party for failing to comply with a court's discovery order. Fed. R. Civ. P. 37(b). Specifically, "[i]f a party or a party's officer . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders [which] may include the following:

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)  striking pleadings in whole or in part;
>
> (iv)   staying further proceedings until the order is obeyed;
>
> (v)    dismissing the action or proceeding in whole or in part;
>
> (vi)   rendering a default judgment against the disobedient party; or
>
> (vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). Furthermore, when a court does impose Rule 37(b)(2) sanctions, it "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Courts have "broadly interpreted the authority granted by Rule 37(b)(2) to permit sanctions for failures to obey a wide variety of orders intended to 'permit discovery.'" *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 520 (D.Md. 2010) (citing *Hathcock v. Navistar Int'l Transp. Co.,* 53 F.3d 36, 40 (4th Cir.1995) ("[W]e agree with the basic premise that a default sanction can, under certain circumstances, be an appropriate response to a violation of a Rule 16 order [-] After all, the express terms of Rule 37 permit a trial court to impose sanctions when a party fails to obey an order to provide or permit discovery"); (citing *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 756 n. 7 (7th Cir.1994) ("While courts have only applied Rule 37(b)(2) where parties have violated a court order, courts have broadly interpreted what constitutes an 'order' for purposes of imposing sanctions.")).

"A district court has discretionary power to issue sanctions pursuant to Rule 37(b), 'derive[d] from the district court's 'broad power to protect the administration of justice by levying sanctions in response to abusive litigation practices.'" *Felman Production, Inc. v. Industrial Risk Insurers,* No. 3:09-0481, 2011 WL 4547012, at *8 (S.D.W. Va, Sept. 29, 2011) (J. Chambers) (quoting *S. New England Tel. Co. v. Global NAPs, Inc.,* 251 F.R.D. 82, 90 (D.Conn.2008)) (quoting *Penthouse Int'l Ltd. v. Playboy Enters, Inc.,* 663 F.2d 371, 386 (2d Cir.1981)). However, the Fourth Circuit Court of Appeals requires a district court to consider and balance the following four factors in determining what sanctions to impose under Rule 37(b)(2):

(1) whether the non-complying party acted in bad faith,

(2) the amount of prejudice that noncompliance caused the adversary,

(3) the need for deterrence of the particular sort of non-compliance, and

(4) whether less drastic sanctions would be effective.

*Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir.1998); *accord Belk v. Charlotte-Mecklenburg Bd. of Educ.,* 269 F.3d 305, 348 (4th. Cir.2001) (en banc), *cert. denied,* 535 U.S. 986 (2002).

Furthermore, the Fourth Circuit has cautioned that the district court's power to impose sanctions under Rule 37(b) is "never to be exercised 'when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of (the non-complying party).'" *Felman Production,* 2011 WL 4547012, at *9 (quoting *Wilson v. Volkswagen of Am., Inc.,* 561 F.2d 494, 503 (4th Cir.1977)) (quoting *Societe Internationale v. Rogers,* 375 U.S. 197, 212 (1958)). Accordingly, "[s]anctions must be weighed in light of the full record in the case." *Felman Production,* 2011 WL 4547012, at *9 (quoting *S. New England Tel. Co.,* 251 F.R.D. at 95 (quoting *Penthouse Int'l Ltd.,* 663 F.2d at 388)). Moreover, "[t]o warrant dismissal, the offending party's conduct in the litigation must demonstrate a 'pattern of indifference and disrespect to the authority of the court.'" *Felman Production,* 2011 WL 4547012, at *9 (quoting *PVD Plast Mould Indus. Ltd. V. Polymer Grp., Inc.,* 2001 WL 1867801 (D.S.C. 2001), at *4) (quoting *Mut. Fed. Sav.  Loan Ass'n v. Richards & Assocs.,* 872 F.2d 88, 92 (4th Cir.1989)).

### III.      DISCUSSION

#### A.  Rule 37 Sanctions

The Court finds that Rule 37(b)(2) sanctions should be applied due to Plaintiffs' counsel's failure to comply with the Court's discovery orders. Fed. R. Civ. P. 37(b).  Plaintiffs' counsel has failed to comply with numerous Court orders, including orders to compel discovery, as well as generic Rule 16 scheduling orders. (*See, supra* at 1-10.)  For example, as detailed more fully above, Plaintiffs' counsel: (1) disobeyed the Court's April 14, 2011 order requiring

Plaintiffs to file a clarifying memorandum by April 24, 2011, so that the Court could properly analyze Plaintiffs' joinder motion (Document 21);[7]   (2) disregarded the Court's June 27, 2011 order granting him ten days to file an amended complaint (Document 27);[8]   (3) ignored the operative Scheduling Order (Document 15) by filing a second motion to amend first Amended Complaint, almost six months after the deadline to complete pleading amendments and party joinders (Documents 33 and 34);   (4) flouted the Court's order granting Anderson and Weiler's Motion to Compel full and complete answers and responses to their First Set of Interrogatories and Requests for Production of Documents (Document 83);[9]   (5) ignored the court-ordered December 7, 2011 deadline for Rule 26(a)(1) disclosures (Document 61); and (6) contravened Magistrate Judge VanDervort's clear thirty-day deadline to file a response to Defendants' motions to dismiss (Document 97 at 27, ln. 8-11).[10]  Even Plaintiffs' counsel acknowledged that there are "serious deficiencies in recognizing the timeliness of this court's deadlines." (Document 143 at 25, ln. 5-7.)

    In determining which of the Rule 37(b)(2) sanctions to apply, the Court must apply the four-factor test from *Anderson*. *Anderson*, 155 F.3d at 504.  The Court must also look to the full record and consider the facts and circumstances of the case. *See, Felman Production,* 2011 WL 4547012, at *9.

    Initially, the Court must consider "whether [Plaintiffs' counsel] acted in bad faith." *Anderson*, 155 F.3d at 504. The record clearly reflects a pattern of noncompliance indicative of

---

[7] Plaintiffs' counsel replied out of time on June 8, 2011, with a one sentence bullet point, in an untimely response to Sears' Motion to Continue the Scheduling Order. (Document 26.)

[8] Plaintiffs' counsel replied out of time on July 8, 2011. (Document 31.)  On July 11, 2011, counsel moved to have his first amended complaint designated as timely because "[j]ust before the close of business" on the day of the deadline, the clerk directed him to resubmit the amended complaint with a correction. (Document 35.)

[9] Eight months after the Magistrate Judge granted Anderson and Weiler's Motion to Compel, Plaintiffs' counsel hand-delivered the responses on January 14, 2013.  (Document 140.)

[10] Plaintiffs' counsel missed the deadline and instead filed a Motion for Enlargement of Time to File Memorandum on the day the response was due. (Document 108.) The motion is currently pending before the Magistrate Judge.

bad faith. (*See, supra* at 1-10.)  In addition to Plaintiffs' counsel's disregard for court ordered deadlines and the discovery process, he has admitted to "sitting on" documents he owed to Anderson and Weiler's counsel. (Document 143 at 28, ln. 15.)[11]  Plaintiffs' counsel admitted his tactic for retrieving documents was "not [. . .] an appropriate way [. . .] to deal with outstanding discovery requests." (*Id.*, ln. 17-19.)  There is also evidence that Plaintiffs' counsel has "sat on" four year old photographs of the metal fragment alleged to have caused Plaintiff James King's injury. (*Id.* at 44, ln. 20-23.) Although Plaintiffs' counsel stated that he supplied the photographs as part of their "continuing duties to supplement," Anderson and Weiler's counsel contended that "[Plaintiffs] held the exemplar . . . hostage for one year." (*Id.* at 45, ln. 16-17.)[12]  The Court notes there is no indication in the record that the photographs were recently taken or, in other words, taken in close proximity to their disclosure.

As previously stated, during the hearing before Judge Faber on January 14, 2013, Plaintiffs' counsel offered the illness and hospitalization of James A. King during and around the time of a scheduled deposition as an explanation for the cancellation and rescheduling of King's deposition.  However, the record does not reveal that any medical records were tendered in support of this claim.  Further, Plaintiff's counsel offered the relocation of his parents in 2010 and early 2011, as well as the incapacity of his full-time secretary in 2010, as additional explanation for his delay.  Neither "explanation" encompassed the delay after early 2011.  Given the superficial explanations which generally came as "after-thought," the Court cannot interpret Plaintiffs' counsel's repeated disrespectful and unprofessional conduct as anything other than bad faith.

---

[11] At the January 14, 2013 motions hearing, Plaintiffs' counsel admitted to telling Anderson and Weiler's counsel, 'We are each sitting on something that the other owes to one another.' (Document 143 at 28, ln. 12-16.)

[12] Anderson and Weiler's counsel states that "[t]hat information has been requested from the early days of this litigation, before the product defendants were involved, and [he's] asked for it for a year." (Document 143 at 44, ln. 23-25.)

Second, the Court must examine "the amount of prejudice that noncompliance caused [Anderson and Weiler]." *Anderson*, 155 F.3d at 504.  In addition to Plaintiffs' counsel's bad faith conduct, evidenced above, and disregard for discovery and court deadlines, his conduct, in failing to pursue this case, has prejudiced Anderson and Weiler and has hindered their ability to defend themselves.  As noted above, Plaintiffs' counsel did not respond to Anderson and Weiler's interrogatories and document production requests (Document 72) for twelve months, defying the Court's order (Document 83) to do so for eight months. (Document 140.) Furthermore, Anderson and Weiler allege that "by failing to release information and documentation regarding their claims, Plaintiffs have kept [them] at the starting gate while the litigation proceeds towards expert disclosures and the discovery deadline." (Document 91 at 8.) At the January 14, 2013 motions hearing, Anderson and Weiler's counsel explained that "it's five years since the workplace accident, and Plaintiffs have yet to identify what the claim is against my clients" (Document 143 at 41, ln 20-22) and that "[his] clients were being prejudiced by not having that information," asking "[w]hat are we supposed to defend?" (*Id.* at 42, ln. 21-22.)  The prejudice Plaintiffs' counsel has caused is evidenced both by the extreme difficulty Anderson and Weiler have had in defending this case as well as the lack of justifiable excuse for his conduct.

Third, the Court must address "the need for deterrence of the particular sort of non-compliance." *Anderson*, 155 F.3d at 504. "'[S]talling and ignoring the direct orders of the court with impunity' is 'misconduct' and 'must obviously be deterred.'" *Young Again Products, Inc., v. Acord*, 459 Fed.App'x 294, 303 (4th. Cir.2011) (quoting *Mut. Fed.* Sav. *And Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 93 (4th Cir.1989)).  Plaintiffs' counsel's behavior can only be described as flagrantly ignoring court orders and discovery rules.  This is precisely the kind of

behavior that courts must deter.  Plaintiffs' counsel's particular non-compliance with Court orders is inextricably tied to his inaction and pattern of resistance in pursuing this case from its beginning.  Striking pleadings or declaring facts established concerning matters to be discovered might deter non-compliance when a party's non-compliance relates solely to a single discovery issue.  Here, however, Plaintiffs' counsel's conduct  relates  not only to his failure to timely respond to discovery and his willful refusal to participate in the discovery process, but also to his failure to follow Court orders more generally.  In other words, the Court needs to deter the broader neglect Plaintiffs' counsel has demonstrated in this case.  "It is important that others contemplating this type [of] tactic understand that it is an unacceptable practice to fail to [comply with discovery requests], and especially in response to a court order." *Progressive Minerals, L.L.C. v. Rashid,* No. 5:07-cv-108, 2009 WL 2761295, at *4 (N.D.W. Va. Aug. 28, 2009). Counsel, generally, should be deterred from impeding the progress of litigation by engaging in a strategy of delay by refusing to prosecute cases, refusing to follow the rules of discovery, and refusing to obey court orders.  Accordingly, the Court finds that sanctions were designed to deter the very type of conduct demonstrated by the non-compliance of Plaintiffs' counsel here.

Fourth, the Court must assess "whether less drastic sanctions would be effective." *Anderson*, 155 F.3d at 504. The Court notes that Plaintiffs' counsel's inaction, apparent unwillingness to abide by deadlines and court orders, and dubious tactics regarding discovery permeate this case.  The Court granted Anderson and Weiler's motion to compel, wherein it entertained Rule 37 sanctions, to no avail. (*See* Document 83.)  Plaintiffs' counsel completely disregarded the Court order by not complying for eight months. (Document 140.)  Notably, Plaintiffs' counsel has never responded to Anderson and Weiler's Motion for Sanctions, in which they state that they "believe a complete dismissal of Plaintiffs' claims would not be an abuse of

19

the Court's discretion," even though the Magistrate Judge mercifully gave Plaintiffs' counsel thirty (30) extra days to respond. (Document 97 at 27, ln. 8-15.)   The record reveals that Plaintiffs' counsel's lack of respect for the Court and the discovery process has greatly impacted this case.   As noted above, Plaintiffs' counsel's conduct and pattern of resistance has prejudiced Anderson and Weiler and their ability to defend against the Plaintiffs' claims. Clearly, the courtesies of the Court and opposing counsel, the threat of sanction, having been required to defend his inaction in hearings before the Court, motions to compel nor court orders have been sufficient to garner Plaintiffs' counsel's compliance.   Given counsel's flagrant disregard of prior court orders, this Court finds that a sanction less drastic than dismissing the claims against Anderson and Weiler would not be effective in this case.

Although this Court takes no pleasure in granting this motion, having carefully considered and weighed all of the relevant factors, the Court finds that Anderson and Weiler's Motion for Sanctions (Document 90) should be granted and that dismissal of the claims against them is warranted pursuant to Rule 37(b)(2)(A)(v) of the Federal Rules of Civil Procedure. Moreover, the Court will review documentation relative to the amount of "reasonable expenses" to which Anderson and Weiler are entitled, and which the Court is required to order Plaintiffs' counsel to pay, pursuant to Rule 37(b)(2)(C).

## IV.   CONCLUSION

Wherefore, based on the findings herein, the Court does hereby **ORDER** that Anderson and Weiler's *Motion for Sanctions* (Document 90) be **GRANTED.**   Specifically, the Court **ORDERS** that the claims against Defendants Anderson Products, Inc., and Weiler Corporation be **DISMISSED WITH PREJUDICE.**

20

The Court further **ORDERS** Anderson and Weiler to submit a statement of reasonable expenses, including attorney's fees, with supporting documentation and explanation, in accordance with this decision, **within thirty (30) days** of the entry of this Order.  Lastly, the Court **ORDERS** that Plaintiffs' counsel shall respond with any objection thereto **within fifteen (15) days** of the receipt of the same.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      February 22, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA