## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **JAMES A. KING**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:10-1024** |
| | ) | |
| **SEARS ROEBUCK & COMPANY**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Defendant Black & Decker, Inc., [Black & Decker] has filed a Motion to Dismiss Plaintiffs' Second Amended Complaint and a Memorandum in Support. (Document Nos. 52 and 53.) Defendant Sears Roebuck and Company [Sears] has filed a Motion to Dismiss Counts II, III and IV of Plaintiffs' Second Amended Complaint and a Memorandum in Support. (Document Nos. 58 and 59.) Defendants Anderson Products, Inc. [Anderson], and Weiler Corporation [Weiler] have filed a Motion to Dismiss Plaintiffs' Second Amended Complaint and a Memorandum in Support. (Document Nos. 62 and 63.)[1] Plaintiffs have filed a Response to these Motions (Document No. 110.), and Defendants have filed Replies (Document Nos. 121 and 122.). Having conducted a thorough examination of the record and applicable law, the Court hereby grants the aforesaid Motions.

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed their Complaint in this matter in the Circuit Court of Mercer County, West

---

[1] By Memorandum Opinion and Order filed on February 22, 2013, considering Anderson's and Weiler's Motion for Sanctions (Document No. 90.), the District Court ordered that Plaintiffs' claims against those Defendants be dismissed with prejudice. (Document No. 157.)

Virginia, on March 9, 2010, naming Sears Roebuck & Company, Sears Holdings Management Corporation, Sears Holding Corporation and Mr. Thomas Hayslett as Defendants and alleging that Plaintiff James King was injured on March 19, 2008, while working for Sears operating a Craftsman angle grinder to prepare the wheel of a motor vehicle for repair.  Plaintiffs alleged that Sears and Mr. Hayslett, Mr. King's supervisor, knowing of the safety risks in operating the angle grinder, required Mr. King to use the tool without providing safety equipment and procedures. Plaintiffs claimed that Defendants (1) knew of the specific unsafe working condition and high risk of serious injury or death and intentionally, willfully, wantonly and recklessly exposed Mr. King to it causing his injuries, (2) are strictly liable as manufacturers of the angle grinder for Mr. King's injuries, (3) breached implied warranties respecting their products as they could foresee Mr. King's use of them on March 19, 2008, (4) acted intentionally and with willful, wanton and reckless disregard for the foreseeable consequences of the manufacture and use of their product and (5) caused Mr. King's wife and daughter to suffer loss of care, comfort, consortium and support. Plaintiffs requested compensatory and punitive damages, pre- and post judgment interest and attorney's fees and costs. Plaintiff's Complaint was served upon Mr. Hayslett on July 14 and the corporate Defendants on July 21, 2010.

Defendants removed the matter to this District Court on August 16, 2010. (Document Nos. 1 and 2.) On August 23, 2010, the Sears Defendants filed an Answer to  Plaintiffs' Complaint (Document No. 4.) and Mr. Hayslett filed a Motion to Dismiss (Document Nos. 5 and 6.).

Plaintiffs filed a Motion to Remand on September 15, 2010 (Document Nos. 8 and 9.), and on September 29, 2010, the Sears Defendants filed a Memorandum of Law in Opposition to Plaintiffs' Motion to Remand. (Document No. 11.)

On January 21, 2011, Plaintiffs filed a Motion to Amend their Complaint and Join Parties. (Document Nos. 17 and 19.) Plaintiffs requested, among other things, to join Black & Decker, Anderson and Weiler as Defendants having learned through disclosures that these entities manufactured the products which they identified in their Complaint. Plaintiffs attached their Proposed Amended Complaint to their Motion. Plaintiffs also proposed to dismiss their claims against Sears Holdings Management Corporation and Sears Holding Corporation. (Document No. 19, p. 3.) By Memorandum Opinion and Order filed on February 14, 2011, the District Court granted Mr. Hayslett's Motion to Dismiss and denied Plaintiffs' Motion to Remand. (Document No. 20.)

By Memorandum Opinion and Order filed on June 27, 2011, the District Court granted Plaintiffs' Motion to Amend their Complaint and Join Parties. (Document No. 27.)

On July 8, 2011 Plaintiffs filed their First Amended Complaint (Document No. 31.) and a Motion to Amend it. (Document Nos. 33 and 34.) By their Motion to Amend their First Amended Complaint, Plaintiffs requested to add claims for past lost wages, future lost income, loss of enjoyment of life and severe emotional injury and mental anguish. Summonses were issued and served (Document Nos. 32 and 39 – 41.), and Defendants filed Answers. (Document Nos. 42, 44 and 45.) Additionally, Black & Decker filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 46 and 47.)

By Order filed on August 18, 2011, the District Court granted Plaintiffs' Motion to Amend their First Amended Complaint. (Document No. 48.) Plaintiffs then filed their Second Amended Complaint. (Document No. 49.) Plaintiffs' Second Amended Complaint begins by identifying the parties to this action and alleging jurisdictional facts. (Id., ¶¶ 1 - 7.) In Paragraph 8, Plaintiffs state that "[c]ertain of the allegations, particularly with respect to the manufacture, marketing and placing

into the stream of commerce certain products, which are alleged to have caused or contributed to the injuries sustained by the Plaintiff, James A. King, as hereinbelow stated, refer collectively to the 'corporate Defendants,' a term which as used hereinafter refers to all of the Defendants." Plaintiffs then allege the facts underlying their claims in their Second Amended Complaint as follows:

9.      For several years prior to March 19, 2008, the Plaintiff, James A. King, was employed with the Defendant Sears, primarily at their location in Mercer County, West Virginia.

10.     Among the acts engaged in by the corporate Defendants was the procurement, marketing, testing, manufacturing and placing into the stream of commerce certain items used by Sears in their commercial enterprises, including but not limited to, an angle grinder, marketed under the 'Craftsman' name which, according to Plaintiffs' information and belief, is a registered trademark of Sears. These items were sold to the general public and supplied to the Plaintiff's employer as a tool for his use in the course of his employment with Sears.

11.     The particular Craftsman angle grinder that was manufactured, and/or procured by one or more of the corporate Defendants and placed into interstate commerce by them, and used by Plaintiff, James A. King, on March 19, 2008, as hereinbelow stated, contained a defect which presented a serious specific risk of serious bodily injury or harm through the intended use of the product for its intended purposes. Specifically, attachments also manufactured or procured or placed into commerce by one or more of the corporate Defendants, which were marketed as attachable tool bits to the Craftsman angle grinder and sold in connection with it, contained abrasive metal surfaces, which the corporate Defendants knew or through the exercise of reasonable diligence should have known, would break off and detach at high speeds, presenting the risk of serious bodily injury or harm to the operator of the Craftsman angle grinder utilizing this tool for its intended purpose and in the manner prescribed.

12.     On March 19, 2008, while acting in the scope of and in the course of employment, and at all times under the direction of his employer and the agent or agents for his employer, the Plaintiff was instructed to remove certain dirt, debris, corrosion, grime, rust and other objects from a wheel of a motor vehicle to perform repairs, and in so doing, was directed to use the Craftsman angle grinder for that purpose.

13.     The Craftsman angle grinder in question, which was procured, marketed, tested and manufactured for use in the course of the Plaintiff's employment by one or more of the corporate Defendants, carried with it substantial and explicit warnings

to advise users of the serious risk of bodily harm attendant with use of this tool and its attachments, and the requirement to mitigate those risks by utilization of certain safety equipment and procedures.

14.    In spite of knowing these significant risks of serious bodily injury and specific requirements to mitigate those risks by using safety equipment and exercising certain explicit precautions, Defendant Sears specifically requested and demanded that the Plaintiff utilize the equipment in the course and scope of his employment while performing his duties on March 19, 2008, without providing the required safety equipment or enabling said safety precautions in breach of their legal duties.

15.    As a direct result of, and proximately caused by the conduct of the Defendants as hereinabove stated, the Plaintiff was seriously injured in the course of his employment through the operation and use of said Craftsman angle grinder, and suffered and has continued to suffer, permanent and disabling injuries as a direct result thereof.

Plaintiffs allege separate causes of action in their Second Amended Complaint. First, they allege that Sears knew of the specific unsafe working condition and high risk of serious injury or death and intentionally, willfully, wantonly and recklessly exposed Mr. King to it causing his injuries. (Id., ¶¶ 17 - 19.) Second, They allege Defendants' strict liability as follows (Id., ¶ 20):

As a direct result of and proximately caused by the corporate Defendants, jointly and severally as hereinabove stated, and by virtue of the fact that one or more of these Defendants, jointly and severally, manufactured, procured and /or placed into commerce a product for common and general use by the consuming public, these Defendants are strictly liable, jointly and severally, for the damages sustained by the Plaintiff as hereinabove stated.

Third, Plaintiffs allege Defendants' breach of implied warranty of fitness for a particular purpose as follows (Id., ¶¶ 21 and 22.):

21. At the time that the corporate Defendants placed their Craftsman angle grinder and auxiliary tools into the stream of commerce, they did so or should have done so with complete knowledge of the particular purposes to which these products would be used by consumers, including but not limited to, the Plaintiff, James A. King.

22. Concurrently, upon the purchase of these products by the Plaintiff's employer, said products achieved levels of implied warranty, including but not limited to those

5

provided by W.Va. Code § 46-2-315. These warranties were breached by one or more of these corporate Defendants by the particular and foreseeable uses to which they were subjected on March 19, 2008 by the Plaintiff, James A. King, and the resultant injuries and damages he sustained as hereinabove stated.

Finally, Plaintiffs allege that Defendants' acts and omissions were intentional, willful, wanton, reckless and grossly negligent (Id., ¶ 23.) and claim entitlement to damages for loss of consortium (Id., ¶ 24.).

On September 6, 2011, Black & Decker filed its Motion to Dismiss Plaintiffs' Second Amended Complaint and a Memorandum in Support. (Document Nos. 52 and 53.)[2] Black & Decker asserts that (1) Plaintiff James King alleges liability and entitlement to damages for a workplace injury which occurred on March 19, 2008, and Plaintiffs filed their First Amended Complaint joining Black & Decker as a Defendant on July 8, 2011. Plaintiffs' claims against Black & Decker are therefore barred by operation of the two-year statute of limitation set forth at W.Va. Code § 55-2-12(b); (2) Plaintiffs have failed to meet the minimal pleading standards set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure because they have not alleged facts indicating that Black & Decker "marketed, tested, manufactured, procured and/or sold the subject product" or how they are entitled to punitive damages; and (3) Plaintiffs' "deliberate intention" claim against Defendant Sears may proceed, but their products liability claim against Sears fails under the Workers' Compensation immunity. Respecting its claim that Plaintiffs have failed to meet minimal pleading standards specified in Rule 8(a)(2), Black & Decker states that Plaintiffs "have failed to plead sufficient facts to support their claim for strict liability, breach of warranty and punitive damages . . .." (Document No. 53, p. 3.) Specifically, Black & Decker asserts that Plaintiffs have not (1) identified the

---

[2] Black & Decker also filed an Answer to Plaintiffs' Second Amended Complaint on September 6, 2011. (Document No. 51.)

allegedly defective products and stated which of the Defendants manufactured and sold them; (2) described specifically the defects and their nature whether in design, manufacture or warning labels; and (3) identified any particular purpose for which the allegedly defective products were to be used in support of an implied warranty claim. Black & Decker states that Plaintiffs' Second Amended Complaint must contain factual allegations respecting four elements required for proof of a strict liability claim which the Fourth Circuit Court of Appeals mentioned in <u>American Cyanamid Company v. St. Louis University</u>, 336 F.3d 307, 310 (4th Cir. 2003), *i.e.*, that (1) the defendant sold the product; (2) the product was defective and unreasonably dangerous when used for its intended purpose; (3) the plaintiff used the product for its intended purpose; and (4) the plaintiff was injured as a result of the product's defective condition. (Document No. 53, p. 3.)[3] Black & Decker asserts that "[t]he Complaint contains no facts that state which corporate defendant is responsible for the procurement, marketing, testing and/or manufacturing of any of the products nor does it state which defendant sold the products in question. Thus, Plaintiffs have failed to plead the first element needed to state their claim for strict products liability. * * * Plaintiffs have failed to state any facts that describe the alleged defect and have failed to identify if the alleged defect is in design, manufacturing or the warning labels. Furthermore, Plaintiffs have failed to identify which product (angle grinder or attachment/accessory) has the alleged defect and which Defendant is responsible for said defect. Therefore, Plaintiffs have also failed to sufficiently plead the second, necessary element for strict products liability." (<u>Id.</u>, pp. 3 - 4.) Second, citing <u>W.Va. Code</u> § 46-2-315, Black & Decker contends that "Plaintiffs have also failed to plead sufficient facts to maintain a cause of

---

[3] The Fourth Circuit stated the elements of a strict products liability claim applying Missouri law in *American Cyanamid*.

action for implied warranty for a particular purpose. * * * Plaintiffs have not stated the particular purpose which invokes this alleged warranty. Plaintiffs nowhere alleged that Mr. King's employer purchased the angle grinder and attachments for a 'particular purpose' that in any way differed from the 'ordinary purpose' for which the angle grinder and attachments were to be used, let alone that Black & Decker had reason to know that Mr. King was using the angle grinder and attachments for a 'particular purpose.'" (Id., p. 4.) Finally, Black & Decker asserts that Plaintiffs' punitive damages claim must also be dismissed because it is "incident" to Plaintiffs other claims. (Id., p. 5.)

Plaintiffs did not file a Response to Black & Decker's Motion within the time which the Court had designated for doing so, and on September 29, 2011, Black & Decker filed a Reply to Plaintiffs' Failure to Respond to its Motions to Dismiss Plaintiffs' First and Second Amended Complaints. (Document No. 56.) Black & Decker states that Plaintiffs filed their Second Amended Complaint on August 18, 2011, and Black & Decker filed its Motion to Dismiss on September 6, 2011. Black & Decker states that Plaintiffs' response was due on September 20, 2011, and they did not serve or file one and did not request an extension of time to do so. Black & Decker suggests that Plaintiffs' failure to respond to its Motion to Dismiss should be regarded as an indication that Plaintiffs do not oppose the Motion.

On October 3, 2011, Sears file a Motion to Dismiss Counts II, III and IV of Plaintiffs' Second Amended Complaint and a Memorandum in Support. (Document Nos. 58 and 59.)[4] Counts II, III and IV of Plaintiffs' Second Amended Complaint assert claims of (1) strict products liability, (2) breach of implied warranty and (3) Defendants' gross negligence and intentional and reckless

---

[4] Sears also filed an Answer to Plaintiffs' Second Amended Complaint on October 3, 2011. (Document No. 57.)

conduct respectively. Sears asserts that Counts II, III and IV of Plaintiffs' Second Amended Complaint should be dismissed because at the time of the alleged accident which is the subject of this matter Plaintiff was an employee of Sears Roebuck and Sears Roebuck is statutorily immune from suit under W.Va. Code § 23-2-6 on the basis of all civil claims except claims of deliberate intent. Sears further claims that under W.Va. Code § 23-4-2(iii)(A), Plaintiffs are not entitled to punitive damages with respect to their deliberate intent claim (Count I).

Anderson and Weiler filed Joinders in Black & Decker's Motion to Dismiss and Reply to Plaintiffs' Failure to Respond to their Motions to Dismiss (Document Nos. 55 and 60.), and on November 12, 2011, they filed their Motion to Dismiss Plaintiffs' Second Amended Complaint and a Memorandum in Support. (Document Nos. 62 and 63.) They assert that (1) Plaintiff James King alleges liability and entitlement to damages for a workplace injury which occurred on March 19, 2008, and Plaintiffs filed their First Amended Complaint joining them as Defendants on July 8, 2011. Plaintiff's claims against them are therefore barred by operation of the two-year statute of limitation set forth at W.Va. Code § 55-2-12(b); and (2) Plaintiffs have failed to meet the minimal pleading standards set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure because they have not alleged facts indicating that Black & Decker "marketed, tested, manufactured, procured and/or sold the subject product" or how they are entitled to punitive damages.

The undersigned held a hearing on June 26, 2012, in consideration of several Motions including Black & Decker, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Document No. 52.), Sears' Motion to Dismiss Counts II, III and IV of Plaintiffs' Second Amended Complaint (Document No. 58.) and Anderson and Weiler's Motion to Dismiss Plaintiffs' Second Amended Complaint. (Document Nos. 62.) During the hearing, Plaintiffs' attorney stated that "my

decision would be not to oppose the Sears motion to Dismiss, but note our intention to oppose the co-defendant motions to dismiss." (Document No. 97, p. 25.) The Court allowed Plaintiffs' attorney thirty days to respond in opposition to Defendants' Motions to Dismiss. (Id., p. 34.)

Following the hearing on June 26, 2012, the parties filed written consents that the undersigned consider the pending Motions to Dismiss. (Document Nos. 96, 98, 99 and 103.) In view of the parties written consents, by Order filed on July 13, 2012, the District Court referred Defendants' Motions to Dismiss (Document Nos. 52, 58 and 62.) to the undersigned. (Document No. 104.)

On July 30, 2012, Plaintiffs filed their Response to Defendants' Motions to Dismiss. (Document No. 110.) Plaintiffs contend that Defendants' statute of limitations defense is properly considered under Federal Rule of Civil Procedure 56 and not under Rule 12(b)(6). (Id., p. 10.) Plaintiffs assert that utilizing documents entitled "Universal Terms and Conditions" between Sears and Black & Decker and Anderson and Weiler, Defendants "actively concealed the identity of the actual manufacturers . . .." (Id., p. 11.)[5] Next, Plaintiffs contend that their claims against Defendants relate back to the date of the filing of their Complaint. (Id., pp. 12 -16.) Citing Adams v. Insurance Company of America (INA), 426 F.Supp.2d 356 (S.D.W.Va. 2006), in which the District Court (District Judge Copenhaver) adopted and applied a four part test enunciated by the West Virginia

---

[5] In their Response, Plaintiffs refer to a December 22, 2010, letter from Plaintiffs' attorney to Black & Decker's attorney as Exhibit A, a "Universal Terms and Conditions" agreement between Sears and Black & Decker dated July 13, 2007, as Exhibit B, a "Universal Terms and Conditions" agreement between Sears and Anderson dated June 27, 2007, as Exhibit C and the Craftsman Angle Grinder Instruction Manual as Exhibit D. A copy of the December 22, 2010, letter from Plaintiffs' attorney to Black & Decker's attorney is filed at Document No. 108, pp. 6 - 7. The "Universal Terms and Conditions" agreements are filed under seal as Document No. 109. Black & Decker and Anderson are identified as Sellers under these agreements. A copy of the Craftsman Angle Grinder Instruction Manual is filed at Document No. 108, pp. 15 - 27.

Supreme Court of Appeals in <u>Brooks v. Isinghood</u>, 213 W.Va. 675, 584 S.E.2d 531 (2003), Plaintiffs argue that (1) their claims against Defendants arose out of the same conduct alleged in their original Complaint; (2) Defendants had notice of their filing of the original Complaint as is clear from December 22, 2010, communications between Plaintiffs' counsel and Black & Decker's counsel and communications between Sears and the other Defendants and are therefore not prejudiced by the delay in being named parties; (3) the "Universal Terms and Conditions" documents evidence that Defendants knew or should have known that they would have been named as parties in the original Complaint but for a mistake; and (4) Defendants received notice of the action and knew or should have known of the mistake within the period of time prescribed for commencing this action and service of the original Complaint. Plaintiffs acknowledge that "difficulty lies in the fourth prong of the test" and contend that "their late decision to proceed with the filing and serving a Complaint deprived them of a gap in time between actual service and the expiration of time pursuant to Rule 4(k) of the W.Va. Rules of Civil Procedure. However, this apparent flaw is remedied and made moot by the terms and conditions of the UTC." (<u>Id.</u>, p. 14.) Under the "Universal Terms and Conditions" documents, Plaintiffs urge, Sears became the agent in fact for Black & Decker and Anderson and Weiler. Plaintiffs claim that they obtained "effective service upon Black & Decker and Anderson/Weiler through effective service of their agent in fact. . . .." (<u>Id.</u>, p. 15.) Plaintiff further maintain that notice and knowledge can be inferred from the Defendants' closely intertwined business interests. (<u>Id.</u>) Respecting Defendants' claim that Plaintiffs' allegations of strict products liability contained in their Second Amended Complaint fail to meet Rule 8(a)(2) minimal pleading requirements, Plaintiffs resort to the four part test which the Fourth Circuit applied in <u>American Cyanamid</u> as Defendants did. Plaintiffs argue that "[n]owhere in <u>American Cyanamid</u> does the Court

11

impose upon a Plaintiff the burden of identifying with specificity and particularity which manufacturer made which product; a burden which would have been impossible to meet by virtue of Defendants' conduct and the UTC." (Id., p. 17.) Plaintiffs therefore assert that they have stated "sufficiently specific factual allegations to provide legally adequate notice" of their strict products liability claim. Plaintiffs quote Paragraph 11 of their Complaint as meeting the requirements of the second part of the American Cyanamid test, *i.e.*, the allegation that the products were defective when manufactured and unreasonably dangerous when put to their reasonably anticipated use. (Id., p. 18.) Respecting their claim of breach of warranty of fitness for a particular purpose, Plaintiffs claim that Paragraph 12 of their Second Amended Complaint states the particular use which Mr. King was making of the products and "[i]t is also fairly implied that this particular use was specific to his employer's business and the particular duty that Plaintiff was exercising on March 19, 2008." (Id., p. 19.) Respecting Defendants' claim that their punitive damages claim should be dismissed, Plaintiffs assert that punitive damages are available upon their strict products liability and breach of warranty claims against Black & Decker and Anderson and Weiler and not upon their intentional misconduct claim against Sears which has Workers' Compensation immunity against such claims. (Id., pp. 20 - 21.)[6]

On August 16, 2012, Black & Decker filed its Reply to Plaintiffs' Response. (Document No. 121.) Black & Decker asserts that the Court should consider its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and not under Rule 56 as Plaintiffs urge. Black & Decker contends

---

[6] Having Plaintiffs' statements at the June 26, 2012, hearing and in their Response to Defendants' Motions to Dismiss indicating that they would not oppose Sears' Motion to Dismiss Counts II, III and IV of Plaintiffs' Second Amended Complaint, the Court will grant Sears' Motion.

that Plaintiffs' "exhibits are neither relevant nor necessary to the determination of its Rule 12(b)(6)

Motion." But even if the Court considers its Motion under Rule 56, Black & Decker asserts, "there

are no genuine issues of material fact as to whether the statute of limitations should be tolled and

as to the legal sufficiency of Plaintiffs' pleading." Id., p. 4. Black & Decker claims that the

applicable two-year statute of limitations as set forth at W.Va. Code § 55-2-12(b) cannot be held to

have been tolled for the period of time from March 19, 2010 (two years after Mr. King's injury) to

July 8, 2011, (when Plaintiffs filed their First Amended Complaint naming Black & Decker as a

Defendant) under the discovery rule because Plaintiffs have not shown that they could not learn that

Black & Decker was a potentially responsible party despite their exercise of reasonable diligence

or that "Defendants 'actively concealed' their identities, either by affirmative conduct or under the

terms of the UTC." (Id., p. 7.) Black & Decker further contends that the relation back doctrine stated

in Federal Rule of Civil Procedure 15(c) cannot be held to apply because Plaintiffs have not shown

that Black & Decker received notice of this action or should have known that it might be named as

a Defendant prior to the expiration of the two-year period of limitation. (Id., pp. 8 - 11.) Black &

Decker further claims that Plaintiffs' assertions that Sears and Black & Decker have a unity of

interests and Sears is Black & Decker's agent in fact are without merit. (Id., p. 11.) Respecting

Plaintiffs' response to its claim that Plaintiffs failed to meet minimal pleading requirements in

amending their Complaint to include it as a Defendant, Black & Decker asserts that considering the

elements of a strict products liability claim, Plaintiffs did not "state any facts that describe the

alleged defect and to identify if the alleged defect is in the design, manufacturing or in the warning

labels. * * * Plaintiffs continue to fail to identify which product (angle grinder or

attachment/accessory) has the alleged defect and which Defendant is responsible for said defect."

(Id., p. 13.) Respecting Plaintiffs' claim of breach of warranty of fitness for a particular purpose, Black & Decker asserts that Plaintiffs have failed to allege a particular purpose or use which Mr. King made of the angle grinder and attachments different from their ordinary purpose or use which Black & Decker knew or should have known. (Id., p. 15.)

On August 20, 2012, Anderson and Weiler filed their Reply to Plaintiffs' Response. (Document No. 122.) They take essentially the same positions as Black & Decker in responding to Plaintiffs' opposition to their Motion to Dismiss.

## DISCUSSION

### Minimal Pleading Standards.

Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(d)(1) provides that the allegations contained in the pleading "must be simple, concise and direct." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's

allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Thus, when a defendant challenges the sufficiency of a complaint under Rule 8(a)(2), the Court examines the factual allegations contained therein to determine if they reasonably indicate that discovery will yield evidence of all of the elements of the plaintiff's claim. If, viewing the factual allegations as true, the Court cannot conclude that discovery will yield evidence of all of the elements of the plaintiff's claim, the Court must dismiss the claim.

### Strict Products Liability.

The West Virginia Supreme Court of Appeals recognized strict products liability as a cause of action in <u>Morningstar v. Black and Decker Mfg. Co.</u>, 162 W.Va. 857, 253 S.E.2d 666 (1979), Syllabus Point 4, stating as follows:

> In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard for reasonable safeness is determined not by the particular manufacturer, but by what the reasonably prudent manufacturer's standards should have been at the time the product was made.

Direct evidence of a specific defect is not required. The West Virginia Supreme Court of Appeals stated in <u>Anderson v. Chrysler</u>, 184 W.Va. 641, 403 S.E.2d 189 (1991), Syllabus Point 3, as follows:

> Circumstantial evidence may be sufficient to make a *prima facie* case in a strict liability action, even though the precise nature of the defect cannot be identified, so long as the evidence shows that a malfunction in the product occurred that would not ordinarily happen in the absence of a defect. Moreover, the plaintiff must show that there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction.

<u>See also</u> <u>Bennett v. Asco Services, Inc.</u>, 218 W.Va 41, 48, 612 S.E.2d 710, 717 (2005)("Under <u>Anderson</u>, while a defect in a product cannot be presumed solely from the fact that an accident occurred, proof that a product malfunctioned – that is, failed to function as it was intended and typically would in normal usage – is circumstantial proof of its defective condition. <u>Anderson</u> does

15

not require a plaintiff, to succeed at the summary judgment stage, to conclusively eliminate all possible contributing causes other than a defect for an accident. Instead, a plaintiff is only required to submit evidence that has the capacity to sway the outcome of the litigation, and from which a jury could fairly conclude that the most likely explanation of the accident involves the causal contribution of a product defect.")

Considering the basic framework for a strict products liability claim in West Virginia as it is enunciated in Morningstar, Anderson and Bennett and applying Twombly, the Court must determine whether the factual allegations contained in Plaintiffs' Second Amended Complaint reasonably indicate that Plaintiffs have stated a plausible strict products liability claim against Black & Decker, Anderson and Weiler. The Court finds that they do not. Plaintiffs allege as follows in Paragraph 11 of their Second Amended Complaint:

> The particular Craftsman angle grinder that was manufactured, and/or procured by one or more of the corporate Defendants and placed into interstate commerce by them, and used by Plaintiff, James A. King, on March 19, 2008, as hereinbelow stated, contained a defect which presented a serious specific risk of serious bodily injury or harm through the intended use of the product for its intended purposes. Specifically, attachments also manufactured or procured or placed into commerce by one or more of the corporate Defendants, which were marketed as attachable tool bits to the Craftsman angle grinder and sold in connection with it, contained abrasive metal surfaces, which the corporate Defendants knew or through the exercise of reasonable diligence should have known, would break off and detach at high speeds, presenting the risk of serious bodily injury or harm to the operator of the Craftsman angle grinder utilizing this tool for its intended purpose and in the manner prescribed.

Beyond the basic allegations that the Craftsman angle grinder and/or the attachments to it were defective, the accident occurred and Mr. King was injured, Plaintiffs do not describe the attachment(s) to the Craftsman angle grinder which Mr. King was using when he was injured, identify the maker(s) of the attachment(s) and allege specifically how the grinder and/or the attachments malfunctioned and therefore were defective. It is therefore not apparent from the factual

allegations contained in Plaintiffs' Second Amended Complaint taken as true that direct or circumstantial evidence would be forthcoming in discovery that the angle grinder and the attachment(s) which Mr. King was using when he was injured were defective, *i.e.*, not reasonably safe for their intended use, in one of those ways. The Court concludes therefore that Plaintiffs' Second Amended Complaint does not contain sufficient factual allegations to state a plausible strict products liability claim showing that Plaintiffs are entitled to relief against Black & Decker, Anderson and Weiler.

### Breach of Implied Warranty of Fitness for a Particular Purpose.

"[A] person injured as a result of breach of an implied or express warranty can sue for his personal injury based on a breach of such warranties. Taylor v. Ford Motor Co., 185 W.Va. 518, 520, 408 S.E.2d 270, 272 (1991). To state a claim for breach of an implied warranty of fitness for a particular purpose with respect to a product causing personal injury, a Plaintiff must allege that the product's maker had knowledge of a particular purpose for which the product would be used other than its ordinary purpose, users of the product would rely upon its skill and judgment to furnish an appropriate product and Plaintiff used the product for that particular purpose. See W.Va. Code § 46-2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.") See Grinage v. Mylan Pharmaceuticals, Inc., 840 F.Supp.2d 862, 871 (D.Md. 2011). Plaintiffs do not allege that Mr. King used the grinder and attachments thereto for any particular purpose other than the ordinary purpose for which they were originally made and that the makers of the grinder and attachments had any

knowledge of that particular purpose. The Court finds therefore that Plaintiffs' Second Amended Complaint does not contain sufficient allegations to state a plausible breach of implied warranty of fitness for a particular purpose claim.

### Statute of Limitations and the Relation Back Doctrine.

Federal Rule of Civil Procedure 8(c) makes the statute of limitations an affirmative defense which must be alleged and proven by the defendant. Ordinarily, facts which might permit consideration of the defense under Rule 12(b)(6) are not alleged in the plaintiff's Complaint. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)("[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'"quoting Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993) and adding emphasis.).

"In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Gaither v. City Hospital, Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997) at Syl. Pt. 4. West Virginia Supreme Court of Appeals Justice Ketchum stated the analytical framework for considering when the

18

discovery rule applies and a claim is barred under the applicable statute of limitation as follows in

Dunn v. Rockwell, 225 W.Va. 43, 53, 689 S.E.2d 255, 265 (2009):

> [Under the discovery rule . . ., whether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test. The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action. This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.
>
> [A] five-step analysis should be applied to determine whether the cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine whether the statute of limitation began to run by determining when the plaintiff knew, or by exercise of reasonable diligence should have known, of the elements of a possible cause of action . . .. Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Federal Rule of Civil Procedure 15(c)(1) states the test for determining when an amendment to a pleading relates back to the date of the original pleading as follows:

> An amendment to a pleading relates back to the date of the original pleading when:
> (A)      the law that provides the applicable statute of limitations allows relation back;
> (B)      the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
> (C)      the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>    (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

See Goodman v. Praxair, Inc., 494 F.3d 458, 471 (4th Cir. 2007)("At bottom, the inquiry, when determining whether an amendment relates back looks at whether the plaintiff made a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged, and it looks into whether the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation. When that party has been given fair notice of a claim *within the limitations period* and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back."); Brooks v. Isinghood, 213 W.Va. 675, 684 - 691, 584 S.E.2d 531, 540 - 547 (2003).

Plaintiffs' Complaint does not contain factual allegations sufficient to rule on Defendants' statute of limitations defense. Plaintiffs therefore correctly contend that the defense is properly considered under Federal Rule of Civil Procedure 56 and not under Rule 12(b)(6).  The Court will consider information which the parties have submitted beyond Plaintiffs' Complaint to determine whether or not a genuine issue of material fact exists with respect to the defense. It is clear that W.Va. Code § 55-2-12(b) applies requiring that "[e]very personal action for which no limitation is otherwise prescribed shall be brought: * * * (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries . . .." It is further clear that Plaintiffs' right to bring suit accrued on March 19, 2008, when Mr. King was injured in the course of his employment with Sears. Plaintiffs therefore had until March 19, 2010, to file a civil action claiming entitlement to damages as a consequence of the March 19, 2008 accident, and they filed their Complaint against Sears on March 9, 2010. Plaintiffs obviously knew, as is evident from their initial Complaint, that they had a right to bring suit alleging Sears' intentional misconduct, strict

products liability and breach of warranty of fitness for a particular purpose before the two-year limitation period expired, but they apparently did not know that Black & Decker, Anderson and Weiler were potential Defendants then. Having alleged strict products liability and breach of warranty claims respecting the angle grinder and its accessories before the expiration of the limitation period, Plaintiffs knew that the manufacturers of those products were potential Defendants prior to the time the period of limitation expired. Apparently, Plaintiffs did not learn who those manufacturers were until several months after the period of limitation expired. It is evident that Plaintiffs' attorney received correspondence from Black & Decker's attorney on December 6, 2010, and responded on December 22, 2010, stating "I appreciate your confirming the identity of your client as to being the manufacturer of the angle grinder referenced in Plaintiffs' Complaint." (Document No. 108, p. 6.) Plaintiffs' attorney further indicated that he had then only recently learned from Sears' attorney that a wire brush attachment to the angle grinder which Mr. King was using on March 19, 2008, was manufactured by Anderson. On January 21, 2011, about ten months after the period of limitation expired, Plaintiffs filed their Motion to Amend their Complaint and Join Parties requesting, among other things, to join Black & Decker, Anderson and Weiler as Defendants. Considering all of these circumstances, the Court finds that the discovery rule does not apply to toll the statute of limitations because Plaintiffs knew that they had a right to sue alleging products liability and breach of warranty causes of action and nevertheless failed to determine the manufacturers of the products before the period of limitations expired. Plaintiffs contend, however, that Defendants concealed their identity in avoidance of suit through the "Universal Terms and Conditions" agreements. The "Universal Terms and Conditions" are or apply to Vendor Agreements between Black & Decker and Anderson as sellers and Sears indicating the parties' agreements

respecting Sears selling of Black & Decker's and Anderson's products. Plaintiffs point to several paragraphs in the agreements as indicating Sears' control of the marketplace and litigation involving Black & Decker's and Anderson's products. The Court finds nothing in the agreements, and there is no other evidence, supporting Plaintiffs' claim that Defendants took steps to conceal their identities. Indeed, it is evident that the opposite is true from Plaintiffs' attorney's December 22, 2010, letter to Black & Decker's attorney that Sears disclosed to him that Anderson was the manufacturer of the wire brush. The Court further finds nothing in the "Universal Terms and Conditions" which indicates that Sears, Black & Decker and Anderson agreed that Sears would be Black & Decker's and Anderson's agent in fact as Plaintiffs claim. There being no other legal doctrine which applies to toll the statute of limitation, the Court concludes that Plaintiffs failed to initiate their claims against Black & Decker, Anderson and Weiler within the two- year period of limitation and they are therefore time-barred.

It remains to determine whether or not Plaintiffs' claims against Black & Decker, Anderson and Weiler relate back to the time of Plaintiffs' filing of their initial Complaint. Considering Rule 15(c)(1)(B), it is clear that the Plaintiffs assert the same claims in their Amended Complaints which they asserted in their initial Complaint. Plaintiffs' Amended Complaints brought in Black & Decker, Anderson and Weiler, and therefore the Court considers the factors set forth at Rule 15(c)(1)(C)(I) and (ii), *i.e.*, whether, during the 120 day period after the expiration of the statute of limitations or by July 19, 2010, Black & Decker, Anderson and Weiler received sufficient notice of this action and knew or should have known that they would have been named as Defendants but for a mistake respecting their identities. It is evident that Plaintiffs' attorney was communicating with Black & Decker's attorney in December, 2010. Plaintiffs' first indicated on the record that they wanted to

22

amend their Complaint to name Black & Decker, Anderson and Weiler as Defendants when they filed their Motion to Amend and Join Parties in January, 2011. (Document No. 17.) They attached their Proposed First Amended Complaint to their Motion. There is no indication that Black & Decker, Anderson and Weiler received notice of this action and knew or should have known that they would have been named as Defendants initially but for a mistake concerning their identity prior to July 19, 2010, 120 days after the date the statute of limitations expired. Plaintiffs' claims against these Defendants cannot be held to relate back to the date of the filing of their initial Complaint.

It is therefore hereby **ORDERED** that Defendant Black & Decker, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Document No. 52.), Defendant Sears Roebuck and Company's Motion to Dismiss Counts II, III and IV of Plaintiffs' Second Amended Complaint (Document No. 58.) and Defendants Anderson Products, Inc.'s and Weiler Corporation's Motion to Dismiss Plaintiffs' Second Amended Complaint (Document No. 62.) are **GRANTED** and all of Plaintiffs' claims against Defendants are **DISMISSED** with prejudice except Plaintiffs' claim of intentional misconduct against Sears.

The Clerk is directed to send or transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: March 7, 2013.

R. Clarke VanDervort
United States Magistrate Judge

23